**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE**

| | |
|---|---|
| **WILLIAMSON MEDICAL CENTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CHARLES E. JOHNSON, acting** ) | **Civ. Action** _____ |
| **Secretary of the United States** ) | |
| **Department of Health and Human** ) | |
| **Services,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| ) | |

---

## COMPLAINT

---

Williamson Medical Center ("the Hospital"), by and through its undersigned counsel, states the following by way of Complaint against Michael O. Leavitt, Secretary of the Department of Health and Human Services ("the Secretary"):

### THE PARTIES

1.      The Hospital is, a governmental acute care hospital created by Private Act (Williamson County Hospital District). The Hospital is a licensed Medicare provider and is located at 2021 Carothers Road, Franklin, Tennessee, and has been assigned Medicare provider number 44-0029.  Williamson Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

2.      Defendant, Charles E. Johnson, is the Acting Secretary ("the Secretary") of the United States Department of Health and Human Services ("HHS") with offices in

Washington D.C. HHS is the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program.

## JURISDICTION

3. This action arises under Title XVIII of the Social Security Act, 42 U.S.C. § 1395oo(f). The United States District Court for the Middle District of Tennessee has jurisdiction in this matter pursuant to the foregoing provision as the Hospital received a final agency determination from the Medicare Provider Reimbursement Review Board ("PRRB") with respect to the Hospital's request for expedited judicial review ("EJR") and the Hospital is resident within the Middle District. The PRRB's decision granting EJR is attached hereto as Exhibit A.

## VENUE

4. Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## FACTS

5. This action arises from the Secretary's failure to include "section 1115 expansion waiver days" in the calculation of a Medicare add-on payment for the Hospital known as the Medicare "disproportionate share hospital adjustment" ("DSH adjustment"). Payments attributable to the inclusion of expansion waiver days in the calculation of the DSH adjustment ("DSH calculation") are due and owing in this case. The Hospital brings this action seeking: (i) a judicial declaration regarding the statutory obligation of the Secretary of HHS under the Medicare statute to include the expansion waiver days in the Hospital's DSH calculation and (ii) an order compelling the Secretary

to recalculate the payment and pay the additional amounts owed to the Hospital, together with statutory interest owed under the Medicare statute on those amounts.

A.    **Medicare Reimbursement**

6.    Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65. It has been expanded to provide health benefits to qualifying disabled persons and individuals suffering from end-stage renal disease.

7.    Among the benefits provided under Medicare are inpatient hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis.  42 U.S.C. **§** 1395f(b).

8.    Effective with cost reporting years beginning or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, including Plaintiff, for their operating costs.  42 U.S.C. **§** 1395ww(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.  *Id.* §§1395ww(d)(1)-(d)(4); 42 C.F.R. §412.1 *et seq*.

9.    The Secretary has delegated much of the responsibility for administering PPS to the Centers for Medicare and Medicaid Services, formerly known as the Health Care Financing Administration.  *See* 42 U.S.C. §§1395h, 1395u (hereinafter collectively referred to as "CMS").

10.    The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.  *Id.* §1395h.

11.     In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. §§ 413.20(b), 413.24(f).

12.     The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR").  42 C.F.R. § 405.1803.

13.     A provider dissatisfied with its intermediary's determination may file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination.  42 U.S.C. § 1395oo(a).

14.     A provider that has filed an appeal with the PRRB may ask the PRRB to determine that it lacks the authority to decide "a question of law or regulations relevant to the matters in controversy."  42 U.S.C. § 1395oo(f)(1).  Such a request is generally known as a request for expedited judicial review ("EJR").

15.     The Board must issue an EJR determination within thirty days of receiving a provider's EJR request and accompanying documents.  42 U.S.C. § 1395oo(f)(1).

16.     If the PRRB determines that it lacks the authority to decide the issue raised by the provider in its EJR petition, a provider may obtain judicial review of that issue by filing a lawsuit within 60 days of receipt of the PRRB's EJR determination or, if the Board fails to render such determination within 30 days, then a provider may bring a civil action within 60 days after the expiration of the 30-day period.  42 U.S.C. § 1395oo(f)(1).

17.     The PRRB issued its EJR determination on January 5, 2009, asserting that it lacked jurisdiction to decide the issue presented here.   Counsel for the providers received notice of the PRRB's decision on January 8, 2009.

18.     The PRRB's EJR determination is considered a final decision and is not subject to review by the Secretary.  42 U.S.C. § 1395oo(f)(1).

**B.     Medicaid Program**

19.     Congress enacted the Medicaid program as part of Title XIX of the Social Security Act in 1965.  Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

20.     States participating in the Medicaid program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs.  42 U.S.C. § 1396d.   Nevertheless, all states must furnish certain minimum benefits under their Medicaid program, including inpatient hospital services.  42 U.S.C. §§ 1396(a)(10)(A), 1396(a)(1).

21.     States also have some flexibility in establishing payment rates for hospital services under their Medicaid programs.  42 U.S.C. § 1396a(a)(13)(A).

22.     States that participate in the Medicaid program are required to develop a State Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. § 1396.  Generally, the State Plan (also referred to as a "Title XIX State Plan" or "Medicaid State Plan") must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396a.

23.     The State of Tennessee, at all relevant times referred to in this complaint, had a valid Title XIX plan approved by the Secretary.

**C.     Demonstration Projects**

24.     Some states, however, provide Medicaid through a demonstration project referred to as a "section 1115 waiver." 42 U.S.C. § 1315.  Under a section 1115 waiver, the Secretary waives some of the requirements that a State Plan must meet as set forth in other sections of the Medicaid statute, such as freedom of choice, comparability, and statewide applicability.  The purpose of the section 1115 waiver is to encourage states to develop innovative and efficient methods of delivering Medicaid coverage through experimental projects.

25.     In some cases, a State plan operating under a waiver covers patients who could have been made eligible for medical assistance under a State plan in the absence of a waiver, i.e. a State plan which complied with all of the requirements set forth in 42 U.S.C. §1396a.

26.     In other cases, a State plan, operating under a waiver, covers patients who could not have been made eligible (in the absence of the waiver) for medical assistance under a State plan complying with all of the requirements set forth in 42 U.S.C. §1315, §1396a.  These patients are referred to as "expansion waiver populations" because they are made eligible for Medicaid by virtue of the waiver.  *See id.*

27.     Section 1115, by operation of law, makes expansion waiver populations eligible for Title XIX medical assistance (Medicaid) by: (i) waiving various State plan requirements, as noted above, and (ii) by deeming costs associated with Section 1115 waiver programs to be expenditures under an approved Title XIX State plan.  *Id.*

§§1315(a)(1), 1315(a)(2)(A).  When Congress enacted the section 1115 waiver provision, it proclaimed, by statutory fiat, that expenditures under valid section 1115 waiver programs were deemed to be expenditures under the State plan of medical assistance approved under Title XIX.  The statute provides:

> The costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under section 1110, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title.

42 U.S.C. § 1315(a)(2)(A)

28.     Furthermore, Congress, when directing the Secretary in 1997 to provide a report on certain information relative to the Medicare DSH formula, confirmed that it considered the Medicare DSH calculation to include not only traditional Medicaid patients, but also "individuals who receive medical assistance under [Title XIX] pursuant to a waiver approved by the Secretary under section 1115 . . . ."  *See* Pub. L. No. 105-33, §4403(b)(3)(B).

29.     CMS has acknowledged that one purpose of the section 1115 waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for traditional Medicaid.  CMS has also acknowledged that the statute allows for expansion populations to be treated as Medicaid beneficiaries. 65 Fed. Reg. 3136 (January 20, 2000).

30.     The State of Tennessee has had a valid section 1115 waiver in place during all of the relevant fiscal periods referenced in this Complaint.  Tennessee's waiver program is referred to as "TennCare."

**D.** **The Medicare DSH Adjustment**

31. In 1986, Congress enacted the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), Pub. L. No. 99-272, § 9105, 100 Stat. 82 (1986). COBRA included a provision that both created and defined the Medicare DSH adjustment. 42 U.S.C. § 1395ww(d)(5)(F). The Medicare DSH adjustment requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." *Id.* § 1395ww(d)(5)(F)(i)(I).

32. Whether a hospital qualifies for the Medicare DSH adjustment, and how large an adjustment it receives, depends upon the hospital's "DSH percentage." *See Id.* § 1395ww(d)(5)(F)(v). Plaintiff, here, is such a hospital that serves a disproportionate share of low-income patients, and is, therefore, eligible for upward adjustments to their Medicare PPS payments.

33. The Secretary delegated to CMS the authority to calculate and administer DSH adjustments as part of the PPS reimbursement system. CMS, in turn, delegates the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPRs.

34. The intermediary calculates a hospital's DSH adjustment by adding two fractions known as the "Medicare Proxy" and the "Medicaid Proxy."

35. This case involves only the Medicaid Proxy of the Medicare DSH calculation.

36. The Medicaid proxy, for all relevant time periods, included, *inter alia*, the number of patient days for patients who were eligible for Title XIX medical assistance during the cost report period:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

37.   A larger number of patients in the numerator of the Medicaid proxy means a larger DSH adjustment for the Hospital, once the hospital meets the threshold DSH level to receive a DSH adjustment.

38.   Because section 1115 of the Social Security Act made TennCare patients eligible for medical assistance under a state plan approved under Title XIX ( i.e., Medicaid), as a matter of law, it follows that the Medicare DSH statute required section 1115 expansion waiver days to be included in the Medicare DSH calculation.

39.   On May 6, 1986, the Secretary issued an interim final regulation to implement the statutory disproportionate share add-on payment (42 C.F.R. §412.106). *See* 51 Fed. Reg. 16, 772, 16,777 (May 6, 1986); 51 Fed Reg. 31,454, 31,460 (Sept. 3, 1986).

40.   The Secretary has interpreted the Medicare statute to exclude the expansion waiver days in the Medicaid proxy of the DSH calculation, and in fact has issued numerous binding policy statements and memoranda prohibiting providers from claiming, and intermediaries from counting, expansion waiver days in the DSH calculation.   For example, CMS issued a policy statement in 1999 that, *inter alia*, prohibited the inclusion of expansion waiver days in the Medicaid fraction.   Program Memorandum No. A 99-62 (December 1999).

41.     The Secretary issued an Interim Final Rule on January 20, 2000, to specifically address its long-standing policy of excluding section 1115 waiver days from DSH calculation.  65 Fed. Reg. 3136 (Jan. 20, 2000).  In the Interim Final Rule, CMS reversed its position, promulgating a regulation that permitted inclusion of expansion waiver days in the Medicaid fraction for discharges on or after January 20, 2000.  However, CMS expressly continued to prohibit their inclusion for discharges prior to January 20, 2000.  CMS promulgated a Final Rule that was exactly the same:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(I) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

42.     The Interim Final Rule constituted an admission on the part of the Secretary that the Medicare Statute, at all relevant time periods, in fact required section 1115 expansion waiver days to be included in the Medicare DSH calculation because the Medicare DSH statute did not provide the Secretary with any discretion as to which days to include.  The Interim Final Rule was, therefore, an admission that the days prior to January 20, 2000 should have been included in the DSH calculation.

**E.     The Present Issue**

43.     The Hospital in the present litigation sought to include expansion waiver days in their cost reports so that the days could be included in the Medicare DSH calculation.  The Medicare fiscal intermediaries, despite the statutory mandate requiring that expansion waiver days be included, nevertheless refused to include the days in the Hospital's DSH calculations for patient discharges occurring prior to January 20, 2000.

44.     The Hospital filed a timely administrative appeal on the expansion waiver day issue with the PRRB for the cost report periods at issue in this case.  The Hospital did not proceed to a hearing on its case, but instead obtained "expedited judicial review" before the PRRB.

<u>**COUNT ONE**</u>
<u>**DECLARATORY JUDGMENT**</u>

45.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth at length below.

46.     Patient days for which a patient was eligible for TennCare (expansion waiver days) should have been included in the numerator of the Medicaid proxy by the Secretary and his intermediaries because TennCare is a section 1115 waiver program approved under Title XIX.

47.     Expansion waiver days are days for which patients are eligible for medical assistance under a State plan approved under Title XIX by virtue of section 1115 and therefore must be included in the Medicaid proxy of the Medicare DSH calculation.

48.     The Secretary has included expansion waiver days in the Medicare DSH calculation beginning with patient discharges on January 20, 2000, but has nevertheless refused to include expansion waiver days for prior discharges in the Medicare DSH calculation.

49.     In computing the Hospital's DSH adjustments for the fiscal year at issue in the present matter, the Secretary and his Medicare fiscal intermediary violated the Medicare DSH statute by excluding section 1115 waiver days from the Hospital's Medicare DSH calculation.  The exclusion of these Title XIX days unlawfully reduced

the Hospital's DSH adjustment and/or deprived the Hospital of its DSH adjustment for that year.

WHEREFORE, the Hospital requests that the Court enter an Order:

A.      Declaring that section 1115 expansion waiver days were required by the Medicare statute to be included in numerator of the Medicaid proxy of the Medicare DSH calculation for the cost report years at issue in this complaint;

B.      Directing the Secretary and/or his intermediaries to recalculate the Hospital's Medicare DSH calculation for the year at issue and include section 1115 expansion waiver days in the numerator of the Medicaid proxy of the Medicare DSH calculation and pay the Hospital the increased sum reflected in the DSH calculation within 90 days of the Court's Order;

C.      Ordering the Secretary to pay interest on the sums owed to the Hospital, as required by the Medicare statute;

D.      Stating that this Court retains jurisdiction in this matter until the Secretary and/or his intermediaries have made payment; and

E.      Allowing such other relief as this Court deems just and appropriate.

Dated: March 6, 2009.

Respectfully submitted,


/s/ John M. Scannapieco
John M. Scannapieco (No. 14473)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
P.O. Box 340025
Nashville, Tennessee 37203
(615) 252-2352
jscannapieco@boultcummings.com

*Attorneys for Plaintiff, Williamson Medical Center*